UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: GARY EDWARD SASSO,　　　　　　　　　　　　No. 12-14564-j7

Debtor.

## MEMORANDUM OPINION AND ORDER GRANTING TRUSTEE'S MOTION TO SELL LIFE ESTATE

THIS MATTER is before the Court on the Motion to Sell Life Estate in Real Property ("Motion"). *See* Docket No. 131. The Chapter 7 Trustee requests the Court to approve the sale of the bankruptcy estate's interest in a condominium located in Chicago, Illinois to Dennis Pantano, as co-trustee of the Marie M. Sasso Trust dated August 15, 2001, and restated on October 21, 2005 (the "Trust")[1] for $12,000.00 cash, plus other consideration. Gary Edward Sasso, *pro se,* opposes the Motion. *See* Docket No. 134.

The Court held a final, evidentiary hearing on the Motion on June 6, 2017 and took the matter under advisement.[2] Philip J. Montoya, Chapter 7 Trustee, appeared at the final hearing on behalf of himself. Edward A. Mazel appeared at the final hearing on behalf of the Trust. Gary Sasso appeared, *pro se,* by telephone. Because Mr. Sasso did not appear in person at the final hearing, the Court enforced its general policy not to allow a party to present evidence or question witnesses if the party appears by telephone at a final hearing. After considering the evidence in light of the applicable Bankruptcy Code sections and case law, the Court finds that the Chapter 7 Trustee has satisfied the applicable requirements for approval of a sale under 11 U.S.C. § 363(b).

---

[1] Although the Trust's assets are owned and purchased by the trustee of the Trust for the benefit of the Trust, for convenience, the Court will refer to the Trust as the owner and buyer of Trust assets.
[2] The Court denied Mr. Sasso's oral request to continue the hearing made shortly after the hearing began based on 1) the untimeliness of the request; and 2) the irrelevance to the pending Motion of the documents Mr. Sasso stated he seeks to obtain from Mr. Pantano to present at the hearing.

FACTS

Gary Sasso ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on December 18, 2012. *See* Docket No. 1. Philip J. Montoya was appointed the Chapter 7 Trustee. *See* Docket No. 2. Marie M. Sasso is the Debtor's mother. She passed away in September 2008. Prior to her death, Ms. Sasso established the Trust. Debtor is a beneficiary of the Trust. Dennis Pantano, the Debtor's cousin and Marie Sasso's nephew, is co-trustee of the Trust. The Chapter 7 Trustee believes that under the terms of the Trust,[3] the Debtor received a life estate in a condominium located at 4160 N. Natchez #401, Chicago, Illinois, 60634 (the "Condo") upon Ms. Sasso's death. Dennis Pantano is not a beneficiary of the Trust.

*The Trust's Use of the Condo*

Since Marie Sasso's death in 2008, the Trust has paid the homeowners' association fees and property taxes associated with the Condo. The homeowners' association fees are currently $431.00 per month. The Trust also paid property taxes on the Condo, which average $3,600 to $3,800 per year, paid semi-annually. In addition, the Trust paid certain homeowners' association assessments. The Trust rented the Condo for approximately four years. The Trust received $1,000 per month, which later increased to $1,100 per month, in rent for the Condo. Presently the Condo is vacant.

*The Value of the Condo*

The condominium complex where the Condo is located has five stories. The complex has a brick façade, outdoor pool and fountain, and parking on the ground floor. The approximate 1500 square foot Condo is on the fourth floor. It has two bedrooms, two bathrooms, a dining

---

[3] Neither Marie Sasso's will, nor a copy of the Trust document was offered into evidence.

-2-

Case 12-14564-j7    Doc 149    Filed 06/27/17    Entered 06/27/17 09:45:47 Page 2 of 14

room, eat-in kitchen and a large laundry room. The master bedroom has a large closet. The Condo currently needs remodeling; in nineteen years, other than replacement of a dishwasher and disposal and repair of a heating unit, no major renovations, upgrades, or remodeling has occurred.

The condominium association recently passed a resolution limiting the number of units that can be leased as rentals at any one time. Because of this limitation, the Condo cannot be rented at this time. The rental limitation negatively affects the Condo's value.

A unit in the condominium complex with the same floor plan as the Condo ("Comparable A") sold for $213,000 in August of 2015. *See* Exhibit 3. Comparable A is located on the top floor, which is more desirable than the fourth floor. Another unit with the same floor plan as the Condo ("Comparable B") located on the third floor of the condominium complex sold for $200,000 in August of 2015. *See* Exhibit 4. Comparable B has an updated kitchen with new appliances and a quartz countertop.

Property taxes for the Condo are assessed on "fair market value," which, in 2015, was $161,950 according to a tax assessment. To prepare the Condo for sale the owner would need to paint, re-carpet, and change the window coverings at a cost of approximately $6,000 to $7,000. Because of its current condition, Mr. Pantano, who is a licensed real estate broker in California with over forty years' experience in residential real estate sales, believes the Condo would likely sell for around $190,000. The Trustee believes, based primarily on Comparable A and Comparable B, an appropriate current fair market value for a fee simple interest in the Condo is $200,000. No other evidence of the current value of the Condo was presented to the Court. The Court finds, based on the evidence, that the current value of the Condo in its current condition is

Case 12-14564-j7    Doc 149    Filed 06/27/17    Entered 06/27/17 09:45:47 Page 3 of 14

$195,000 to $205,000. The net realizable value on sale would be less because of realtor commissions and closing costs.

*The Value of the Life Estate Interest in the Condo*

There is no recorded instrument documenting the Debtor's life estate interest in the Condo. Gary Sasso is currently 61 years old. He has not submitted to a medical examination to assess his current physical condition, nor has the Trustee asked him to. The Trustee did not request the Debtor to get a medical examination because the Trustee did not believe the Debtor would cooperate. This belief is based on the Trustee's prior experience with the Debtor throughout the Debtor's bankruptcy case.

Internal Revenue Service ("IRS") guidelines for use in valuing remainder interests in life estates for gift and tax purposes, show, based on a 2.4% interest rate applicable in January 2017,[4] that the value of a life estate in January 2017 measured by the life of a 61 year old is 37% of the fee simple interest value of the property. *See* Exhibits 1 and 2. The value of the remainder interest in the property is 63% of the current fee simple interest property value. *See* Exhibit 1. Based on the IRS guidelines, a life estate interest in the Condo is worth between $72,150 and $75,850.[5]

There is no established market for a life estate interest in the Condo. In sixteen years of serving as a panel Chapter 7 Trustee, the Trustee has never sold a life estate interest, nor has he received a solicitation to purchase a life estate interest from a bankruptcy estate. The Trustee did not offer to sell the life estate to any party other than the Trust. The Trust is the most likely candidate to buy a life estate interest in the Condo because it owns the remainder interest.

---

[4] The interest rate was the same (2.4%) in June of 2017. *See* Exhibit 2.
[5] $195,000 to $205,000 current value of Condo X 37% = $72,150 to $75,850.

-4-

*The Claims Against the Bankruptcy Estate*

The Trust filed a proof of claim against the Debtor's bankruptcy estate asserting a non-priority unsecured claim in the amount of $271,299.25 based on a judgment the Trust obtained against the Debtor by default in the Circuit Court of Cook County, Illinois County Department, Probate Division (the "Probate Court"). *See* Claim No. 6-1. The Trust later amended its claim to increase the amount of its unsecured claim to $573,102.42. *See* Claim No. 6-2. Before amending its claim, the Trust returned to the Probate Court and obtained an increased judgment amount based on evidence of two allegedly forged checks drawn by Gary Sasso on the Trust's bank account.

PNC Bank, National Association, successor to National City Bank ("PNC Bank") filed a proof of claim in the amount of $231,205.79 based on a third-party complaint filed by PNC Bank against the Debtor in connection with litigation initiated by the Trust against PNC Bank asserting that PNC Bank wrongfully honored the allegedly forged checks. *See* Claim No. 7-1. The Trust later settled its claim against PNC Bank. On June 8, 2017, after the close of evidence on the Motion, PNC Bank filed an amended claim in the amount of $60,000 based on the settlement. *See* Claim No. 7-2.[6] PNC Bank's amended claim states that the claim amount does not include interest or other charges. *Id.* For purposes of the Court's decision, the Court will fix PNC Bank's non-priority unsecured claim against the Debtor's bankruptcy estate in the amount of $60,000.

The remaining non-priority unsecured claims filed against the Debtor's bankruptcy estate are as follows:

| Creditor | Amount of Claim |
|---|---|
| Discover Bank | $2,642.42 |

---

[6] The Court reopens the evidence to take judicial notice of PNC Bank's amended proof of claim.

| | |
|---|---:|
| Capital One Bank | $449.19 |
| Great American Insurance Company | $47,600.00 |
| Webbank-Fingerhut | $1,134.31 |
| Premier BankCard/Charter | $790.01 |
| PYOD, LLC | $640.31 |
| TOTAL: | $53,256.24 |

There are no other claims filed against the Debtor's bankruptcy estate.

*The Terms of the Proposed Sale*[7]

The terms and conditions of the proposed sale are set forth in the Motion and the attached Agreement to Purchase Interest in Real Property. The Trust has agreed to pay $12,000.00 to acquire the bankruptcy estate's life estate interest in the Condo with no warranty of title or other warranty or representation regarding the bankruptcy estate's interest in the Condo. As additional consideration, the Trust will release its claim against the bankruptcy estate and will not assert any other claims against the bankruptcy estate. In exchange, the Trustee, on behalf of the bankruptcy estate, will provide the equivalent of a quitclaim deed for the estate's interest in the Condo, with no warranties. Even if it turns out the bankruptcy estate does not own a life estate interest in the Condo, the bankruptcy estate will receive $12,000.00 from the Trust for distribution to creditors and a release of the Trust's claim against the bankruptcy estate. The Trustee, on behalf of the bankruptcy estate, will also release any potential claim the bankruptcy estate might have against the Trust for use of the Condo during the bankruptcy case. The expenses the Trust paid to preserve the Condo, including monthly homeowners' association fees of $431.00, property taxes, and homeowners' association assessments, roughly equal the rents the Trust received before and after the filing of the Debtor's bankruptcy case. The Trustee testified that even if the Court does not approve the sale of the estate's interest in the Condo to

---

[7] A copy of the Agreement to Purchase Interest in Real Property is attached to the Motion as Exhibit 1.

the Trust, the Trustee does not intend to pursue a claim against the Trust to recover rental income.

If the Trust purchases the bankruptcy estate's interest in the Condo, Mr. Pantano, as co-trustee of the Trust, intends to sell the Condo and distribute the proceeds to the successor beneficiaries under the Trust. Mr. Pantano testified that the successor beneficiaries are three of Marie Sasso's great grandnieces and two great grandnephews. Mr. Pantano testified that if the Trust is unable to purchase the bankruptcy estate's interest in the Condo, the Trust will not continue to pay the homeowners' association fees or the property taxes for the Condo. The Condo cannot be rented at this time because of the condominium complex's rental limitations.

*Notice of the Proposed Sale*

The Trustee filed the Motion on February 25, 2017, and mailed a 21-day notice of objection deadline to all creditors and parties in interest on March 1, 2017. *See* Notice of Deadline for Filing Objections to Trustee's Motion to Sell Life Estate in Real Property ("Notice") – Docket No. 133. The Notice describes the general terms of the proposed sale, states that a copy of the Motion is available for public inspection at the Bankruptcy Court, and directs inquiries to the Trustee, listing the Trustee's address, telephone number and email address. *Id.*

*Assessment of the effect of the sale on distribution to creditors*

The Trustee believes the sale of the estate's interest in the Condo on the terms described above is in the best interest of the estate because it will provide a meaningful distribution to creditors. The benefit of the sale to creditors is much greater than the $12,000 cash payment. The Trust's release of its claim against the bankruptcy estate greatly increases the percentage distribution to other creditors.[8] The Trustee currently has approximately $30,000.00 in the

---

[8] The Court is assuming for purpose of its decision to grant the Motion that all claims filed against the bankruptcy estate will remain allowed claims. There is no evidence to the contrary.

-7-

estate. Excluding the Trust's claim, the total of all claims against the bankruptcy estate is $113,256.24.[9] If the Court approves the sale of the estate's interest in the Condo, the total anticipated percentage distribution to creditors is approximately 37%, without taking administrative expenses into account, and approximately 26.5% assuming $12,000 in administrative expenses.[10] If the Trust's claim were included in the total claims against the bankruptcy estate, the Trustee would need to sell the estate's interest in the Condo for approximately $164,000 net to the estate in order to generate a percentage distribution to creditors comparable to the anticipated percentage distribution under the terms of the proposed sale (assuming $12,000 in administrative expenses).[11] Such a price is wholly unrealistic, given that the fair market value of a fee simple interest in the Condo is $195,000 to $205,000. If the Trustee sold the estate's interest in the Condo for $74,000, the fair market value of a life estate interest based on the IRS tables, the percentage distribution to creditors (including the Trust) would be about 13.5%.[12]

## DISCUSSION

A trustee's sale of the bankruptcy estate's interest in property outside the ordinary course of the Debtor's business is governed by 11 U.S.C. § 363(b).[13] A debtor's interest in real property that is less than fee simple, such as a life estate, is property of the bankruptcy estate. *See*

---

[9] $53,256.24 + PNC Bank's Claim of $60,000 = $113,256.24.
[10] $42,000 (consisting of $12,000 from the sale + $30,000 cash on hand) ÷ $113,256.24 = 37%. $42,000 - $12,000 (of administrative expenses) = $30,000 ÷ 113,256.24 = 26.5%. The Trustee's commission on $42,000 of disbursements would be $4,950. Administrative expenses would also include attorney's fees.
[11] 26.5% of $686,358.66 (consisting of $113,256.24 + Trust's claim of $573,102.42) = $182,000, less the $18,000 cash on hand ($30,000 less administrative expenses of $12,000) in the bankruptcy estate available to pay unsecured claims = $164,000. Even if allowed administrative claims in this bankruptcy case turn out to be substantially higher, the cash consideration for the Condo combined with the release of the Trust's claim against the bankruptcy estate will still likely exceed the benefit to the estate from a cash sale of the bankruptcy estate's interest in the Condo for its fair market value.
[12] ($74,000 + $18,000 = $92,000) ÷ $686,358.66 = 13.5%
[13] Section 363(b)(1) provides, in relevant part: "The Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1).

-8-

11 U.S.C. § 541(a)(1) ("The commencement of a case . . . creates an estate . . . . comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case"); *Still v. Hopkins (In re Hopkins),* 494 B.R. 306, 316 (Bankr. E.D. Tenn. 2013) (debtor's life estate interest in property became property of the bankruptcy estate under 11 U.S.C. § 541(a)(1)). Thus the Debtor's interest in the Condo is property of the bankruptcy estate. A Chapter 7 trustee may sell a debtor's life estate interest in real property.[14]

A trustee seeking to sell the bankruptcy estate's interest in property must demonstrate sound business reasons for the sale. *See In re Allen,* 607 Fed.Appx. 840, 843 (10th Cir. 2015) (unpublished) (stating that "[t]he 'business judgment' test applies to determine whether a sale under § 363(b) should be approved" and that "[u]nder this standard, the Trustee . . . must show sound business reasons for the sale.") (citing *In re Castre, Inc.,* 312 B.R. 426, 428 (Bankr. D. Colo. 2004) (remaining citation omitted). In addition, the Trustee must show: 1) adequate and reasonable notice of the proposed sale; 2) a fair and reasonable price; and 3) the buyer's good faith in purchasing the asset. *In re JL Building, LLC,* 452 B.R. 854, 859 (Bankr. D. Utah 2011) (citing *In re Med. Software Solutions,* 286 B.R. 431, 439-40 (Bankr. D. Utah 2002)). Other factors that bear on the Court's determination include 1) "'whether there was any improper or bad motive involved;'" 2) "'whether the transaction occurred at an arm's length;'" and 3) "'whether there were adequate sales procedures, including proper exposure to the market[.]'" *In re Moreno,* 554 B.R. 504, 510 (Bankr. D.N.M. 2016) (quoting *In re Premier Concrete, LLC,*

---

[14] *See Geddes v. Livingston (In re Livingston),* 804 F.2d 1219, 1223 (11th Cir. 1986) (holding that the trustee could sell the debtor's life estate and contingent remainder interest in real property together with debtor's spouse's life estate interest as tenant in common, but could not force the sale of spouse's contingent survivorship interest in the property under § 363(h)).

-9-

2010 WL 1780046, at *2 (Bankr. D.N.M. May 4, 2010) (citing *Castre,* 312 B.R. at 428) (additional internal quotation marks and remaining citations omitted)).[15]

In applying these factors to the proposed sale, the Court concludes that the Trustee's proposed sale of the Condo to the Trust should be approved. The Trustee's intent to sell the estate's interest in the Condo to provide creditors with a meaningful distribution on their claims is a sound business reason justifying the sale. The Notice gave all creditors and parties in interest adequate notice of the proposed sale of the Condo and the terms of the proposed sale. The price is fair and reasonable. Even though the cash price is only $12,000, which is well below the value of a life estate in the Condo computed under the IRS tables, the terms of the sale include the Trust's withdrawal of its claim against the bankruptcy estate. The effect of the Trust's withdrawal of its claim on the distribution to creditors adds value to the sales price. In fact, unsecured creditors will receive a much higher percentage distribution on their claims under the terms of the proposed sale than if the Trust's claim is included and the Trustee sold the estate's interest in the Condo for the $74,000 estimated fair market value of a life estate interest under the IRS tables. To effectuate a similar percentage distribution to creditors, a potential purchaser would need to offer more than double the amount of the estimated fair market value of a life estate interest in the Condo (assuming $12,000 in administrative expenses). Based on these unique conditions, the sales price is both fair and reasonable.

The Debtor contends that the Trustee has been working collusively with the Trust to sell the Debtor's interest in the Condo. On June 30, 2015 the Court entered an order approving the

---

[15] *See also, In re Childers,* 526 B.R. 608, 613 (Bankr. D.S.C. 2015) (articulating the requirements to satisfy the 'business judgment' test as follows: "'(1) a sound business purpose exists for the sale; (2) the sale price is fair; (3) the debtor [or trustee] has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith.'") (quoting *In re Shipman*, 344 B.R. 493, 495 (Bankr. N.D.W.Va. 2006)).

-10-

Trustee's employment of Askew & Mazel LLC ("A & M") in this bankruptcy case pursuant to 11 U.S.C. §327(a) and (c), as it appeared the law firm's representation of both the Trustee and Mr. Pantano, on behalf of the Trust, would not create an actual conflict of interest. In a Memorandum Opinion and Order entered September 13, 2016 (Docket No. 101), for the reasons stated therein, the Court determined that A & M had developed an actual conflict of interest in representing both the Trustee and the Trust with respect to the sale of the Condo. Thereafter, the Court *sua sponte* entered an Order Terminating Employment of Askew & Mazel, LLC as counsel for the Chapter 7 Trustee. See Docket No. 116. After the Court terminated the Trustee's employment of A & M, the Trustee filed the instant motion, representing himself, to sell the life estate interest in the Condo to the Trust for consideration substantially better for the bankruptcy estate than what the Trust had previously offered. *Compare* Amended Motion to Sell Property (Docket No. 91), which the Court denied (Docket No. 101), with Motion to Sell Life Estate Interest (Docket No. 131). There is no evidence before the Court to support a finding that the proposed sale of the estate's interest in the Condo to the Trust was not negotiated at arm's length.

The Debtor also insists that Mr. Pantano has an improper motive in seeking to purchase the estate's interest in the Condo. He accuses Mr. Pantano of trying to cheat the Debtor of his inheritance. There is no evidence before the Court to substantiate the Debtor's assertions. The Court concludes based on the evidence before it that the Trust is acting in good faith in seeking to purchase the estate's interest in the Condo for the benefit of the remaining successor beneficiaries of the Trust. Mr. Pantano is not a beneficiary of the Trust.

The last factor is exposure of the asset to the market. The Trustee did not offer to sell the estate's interest in the Condo to any party other than the Trust. He did not ask the Debtor to provide medical records or submit to a medical examination, which would give a potential buyer

some measure of the expected life estate term.  On the other hand, there is no established market for the life estate interest.  The Trust, as owner of the remainder interest in the Condo, is the mostly likely buyer of the life estate.  Any other potential purchaser would face the risk of the Debtor's uncertain life expectancy.  *Cf. Rubin v. Burns (In re Burns),* 73 B.R. 13, 16 (Bankr. W.D. Mo. 1986) (observing that "any reasonable potential purchaser of the property would be almost certain to observe that, because of the uncertain life expectancies of the life tenants . . . great risk would be involved in purchasing the life estate.").  Further, the Trust is buying the life estate without any warranty of title.  The sale also relieves the Trustee of the need to pay $431 per month for homeowner association assessments and $3,600 to $3,800 a year for property taxes while marketing the asset, with no current ability to rent the Condo to defray the cost.  It also saves the Trustee a broker's commission and other costs of sale in the event a broker were able to find a buyer.  And as discussed above, the total consideration to the bankruptcy for the sale greatly exceeds the value of the life estate.  Under these circumstances, the Trustee did not need to expose the life estate interest to the market rather than negotiating the sale to the Trust.

     Based on all of the surrounding facts and circumstances, the Court concludes that the proposed sale is in the best interest of creditors and the estate and falls within the Trustee's reasonable and prudent business judgment.  *Cf. Childers,* 526 B.R. at 613 (observing that the "'exercise of such business judgment includes disposition of property if the trustee determines that such disposition is in the best interest of the estate.'") (quoting *In re Lakeside Dev., LLC,* 2012 WL 619071, at \*4 (Bankr. D.S.C. Feb. 24, 2012)).  The sale will result in a meaningful distribution to creditors.  *See Childers,* 526 B.R. at 613 (concluding that the Chapter 7 trustee demonstrated a sound business reason for the sale by showing that the sale would "result in a

significant distribution to unsecured creditors . . ."). No better offers to purchase the estate's interest in the Condo were presented to the Court.

*Sale Free and Clear of Liens, Claims, or Interests*

The Trustee represents in the Motion that the Condo is free and clear of liens and is subject only to the successor beneficiaries' remainder interests under the Trust. Nevertheless, the Trustee requests the Court to approve the sale of the estate's interest in the Condo free and clear of liens (other than the successor beneficiaries' remainder interests). Sales free and clear of liens are governed by 11 U.S.C. § 363(f). To sell estate property free and clear of interests, the Trustee must demonstrate that one of the five subsections of 11 U.S.C. § 363(f) applies.[16] *See Gonzales v. Beery (In re Beery),* 295 B.R. 385, 396 (Bankr. D.N.M. 2003) (stating that "a trustee may not sell any property free and clear of all interests of debtor or co-owners unless the trustee can provide evidence that such a sale will met the tests delineated in § 363(f) and (h).").[17] The Trustee has not cited which subsection of 11 U.S.C. § 363(f) applies, has not offered any evidence in support of a sale free and clear of liens under 11 U.S.C. § 363(f), and has not shown that appropriate notice was given to anyone potentially affected by a sale free and clear. Therefore, the Court concludes that granting relief under § 363(f) is not appropriate.

---

[16] Section 363(f) provides:
> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>> (2) such entity consents;
>> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>> (4) such interest is in bona fide dispute; or
>> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.
>
> 11 U.S.C. § 363(f).

[17] *See also In re Inv. Co. of the Southwest, Inc.,* 302 B.R. 112, at *6 (10th Cir. BAP 2003) (per curiam) (unpublished) ("Section 363(f) expressly requires that the debtor [or trustee] show that at least one of its subsections has been met prior to a sale free and clear of interests.")

CONCLUSION

WHEREFORE, IT IS HEREBY ORDERED that the Motion is GRANTED, in part, and DENIED, in part as follows:

1. The Trustee is authorized to sell the estate's interest in the Condo to the Trust on the terms and conditions set forth in the Motion and the attached Agreement to Purchase Interest in Real Property.

2. Such sale is not free and clear of liens under 11 U.S.C. § 363(f).

ORDERED FURTHER, that the Debtor's objection to the Motion is overruled.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: June 27, 2017

COPY TO:

Gary Edward Sasso
PO Box 50513
Albuquerque, NM 87181

Philip J. Montoya
Chapter 7 Trustee
3800 Osuna Rd NE STE #2
Albuquerque, NM 87109

Edward Alexander Mazel
Askew & Mazel, LLC
Attorney for Dennis Pantano, co-trustee of the Trust
1122 Central Ave. SW, Suite 1
Albuquerque, NM 87102